**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| Nutramax Laboratories, Inc., ) | Civil Action No.  0:17-1260-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                                       ) | **VERIFIED COMPLAINT** |
| ) | |
| Pure Supplements Ltd.,                          ) | Jury Trial Requested |
| ) | |
| Defendant.                       ) | |
| ) | |

## INTRODUCTION

Plaintiff Nutramax Laboratories, Inc. ("Plaintiff" or "Nutramax") as and for its Verified Complaint ("Complaint") against Defendant Pure Supplements Ltd. a/k/a "Perfect Nutra" ("Defendant" or "Pure Supplements"), alleges upon personal knowledge as to its own acts and as to events taking place in its presence, and upon information and belief as to all other facts, as follows:

## NATURE OF THIS ACTION

1.     Plaintiff Nutramax owns the trademark that forms the basis for this Civil Action. For several decades, Nutramax has researched, marketed, distributed, and sold high quality nutritional supplement products for use by humans and animals throughout the United States and internationally, under its trademarked name, NUTRAMAX LABORATORIES®.

2.     Defendant Pure Supplements manufactures, markets, and distributes dietary supplements for human use.  Among them are a "Premium Cleanse," which purports to "help detoxify the body and facilitate healthy and effective digestion," and a supplement called "Garcinia Cambogia," an appetite suppressant that has been described as the "newest, fastest, fat

burner." These supplements are often taken together and referred to as a "Garcinia Cambogia Colon Cleanse."

3.    Defendant offers "free" trials of these products, the exact terms of which vary. In all cases, however, Defendant offers the consumer a trial bottle of product if s/he pays the cost of shipping. Defendant mails the consumer a "free" full supply of the product, and promises not to charge the consumer for that full bottle until the trial period has expired. But consumers across the country complain that Defendant charges the approximately $80 full bottle price *before* the expiration of the trial period, and also complain that they are unable to obtain a refund or cancel the recurring monthly charges that follow.

4.    After purchasing Defendant's products, consumers see the approximately $80 per bottle charge associated with "Nutra Max" on their credit card statements. As a result, consumers are fraudulently misled into believing that Plaintiff Nutramax is the supplier of the products and is behind this scam.

5.    As a result of Defendant's trademark infringement and fraud, Nutramax is suffering a loss to the enormous goodwill it has created in its intellectual property. Further, Defendant's false and misleading designation of origin of its products causes ongoing customer confusion and irreparable harm in the marketplace. This action seeks permanent injunctive relief and damages for Defendant's ongoing trademark infringement, fraud, and unfair trade practices.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

7. This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over Defendant in this district, as Defendant transacts business in South Carolina and is otherwise subject to jurisdiction in this state. Defendants sell products directly to persons residing in this judicial district via the Internet.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c).

## PARTIES

10. Plaintiff Nutramax Laboratories, Inc. is a corporation duly organized and existing under the laws of South Carolina, with its principal office located at 946 Quality Drive, Lancaster, South Carolina.

11. Defendant Pure Supplements Ltd. is a corporation duly organized and existing under the laws of Delaware. Upon information and belief, Pure Supplements has its principal office in New Castle, Delaware.

## FACTS GIVING RISE TO THIS ACTION

12. Nutramax licenses its intellectual property, including the Mark, as defined herein, to certain subsidiary companies who in turn research, market, distribute, and sell high quality nutritional supplements for humans and animals. These products are world-renowned for their high quality.

13. These health products embodying Nutramax intellectual property are sold throughout South Carolina, the United States, and the world, through a network of authorized resellers and veterinarians.

3

*A. Nutramax's Trademark Uses*

14. Since at least as early as 1992, long prior to the infringing acts alleged herein, Nutramax has continuously used the NUTRAMAX mark in commerce in the State of South Carolina in this judicial district and throughout the United States and the world, in connection with the manufacture and sale of a wide variety of products that support human health.

15. Nutramax uses, owns, and has registered on the Principal Register of the United States Patent and Trademark Office the following mark relevant to this action (the "Mark"):

| **Mark** | **Reg. No.** | **Reg. Date** | **Class/Goods** |
| --- | --- | --- | --- |
| NUTRAMAX LABORATORIES | 2231260 | Mar. 16, 1999 | Dietary food supplements |

16. Nutramax's federal trademark registration was duly and legally issued, is valid and subsisting, and constitutes *prima facie* evidence of Nutramax's exclusive ownership of the Mark. The Mark is famous and incontestable under federal trademark law.

17. Nutramax has invested many millions of dollars and has expended significant time and effort in advertising, promoting and developing its trademarks and other intellectual property, including the Mark, throughout the United States. As a result of such advertising and promotion, Nutramax has established substantial goodwill and widespread recognition in the Mark, which has become associated *exclusively* with Nutramax, by both customers and potential customers, as well as the general public at large.

18. To create and maintain such goodwill among its customers, Nutramax has taken substantial steps to ensure that products bearing its trademarks, including the Mark, are of the highest quality. As a result, Nutramax trademarks, including the Mark, have become widely known and are recognized throughout the United States as symbols of high quality products.

4

Customers throughout the United States recognize the Nutramax name, upon which they rely for high quality products.

19.     As a result of, *inter alia*, the care and skill exercised by Nutramax in the conduct of its business, the high quality of the goods sold under Nutramax's trademarks, including the Mark, and the extensive advertising, sale, and promotion by Nutramax of its products, the Mark has acquired secondary meaning in the United States, including in the State of South Carolina.

20.     Nutramax is not now, nor has it ever been, affiliated with Pure Supplements and has not now, nor has it ever, given it permission to use its Mark.

### B. *Pure Supplements' Product Sales*

21.     Pure Supplements manufactures, advertises, markets, offers to sell, and sells a dietary supplement called "Premium Cleanse" which purports to aid digestive health.

22.     Pure Supplements also manufactures, advertises, markets, offers to sell, and sells a dietary supplement called "Garcinia Cambogia," an appetite suppressant which purports to help consumers lose weight fast.

23.     Consumers frequently seek to use Premium Cleanse and Garcinia Cambogia together to lose weight. The coordinated use of both products is often referred to as a "Garcinia Cambogia Colon Cleanse."

24.     Pure Supplements advertises, markets, offers to sell, and sells Premium Cleanse and Garcinia Cambogia, both separately and together, through various websites, including but not limited to: https://mypurecleansetrial.com/home/ (the "Pure Cleanse Website"); premiumcleansepills.com (the "Premium Cleanse Website"); http://www.garciniacambogiacoloncleanse.com/ (the "Garcinia Cambogia Colon Cleanse Website"); https://perfectnutragarciniacambogia.com/ (the "Perfect Nutra Website"); and

5

http://naturalpuregarcinia.com/using-a-colon-cleanse-with-garcinia-cambogia/ (the "Natural Pure Garcinia Website") (collectively, the "Pure Supplements Websites").

25. The Pure Supplements Websites feature the same two versions of the Premium Cleanse and Garcinia Cambogia products:

| **Featured on the Pure Cleanse Website and the Natural Pure Garcinia Website:** | **Featured on the Garcinia Cambogia Colon Cleanse Website, the Premium Cleanse Website, and the Natural Pure Garcinia Website:** |
|---|---|
|  |  |
| **Featured on the Garcinia Cambogia Colon Cleanse Website, the Perfect Nutra Website, and the Natural Pure Garcinia Website:** | **Featured on the Natural Pure Garcinia Website:** |
|  |  |

26. The bottles of Premium Cleanse featured on the Pure Cleanse Website and the Natural Pure Garcinia Website indicate that they are "Distributed by: Pure Supplements, New Castle, DE 19720":



27. The bottles of Premium Cleanse featured on the Garcinia Cambogia Colon Cleanse Website and the Premium Cleanse Website link to the Pure Cleanse Website and contain the same imagery in the advertisements.

28. The bottles of Garcinia Cambogia featured on the Perfect Nutra Website are sold together with the Premium Cleanse Product on the Garcinia Cambogia Colon Cleanse Website and contain the same imagery in the advertisements.

29.     The bottles of Garcinia Cambogia featured on the Natural Pure Garcinia Website link to the Perfect Nutra Website and contain the same imagery in the advertisements.

### C. Pure Supplements' Trademark Infringement and Fraudulent Conduct

30.     All of the Pure Supplements Websites offer consumers the opportunity for a "Risk-Free Trial" of one or both of these products.

31.     For example, the Pure Cleanse Website contains "Terms & Conditions" of a trial offer providing that the consumer can obtain a "free" initial bottle of Premium Cleanse by paying only the $4.87 cost of shipping. After the expiration of the 14-day trial period, Pure Supplements charges the consumer for his/her first $74.74 bottle plus $4.87 shipping, for a total of $79.61. Pure Supplements represents that consumers "are not obligated to purchase after [receipt of the] discounted membership bottle and [] can cancel anytime." The Terms & Conditions on the Pure Cleanse Website provide options to contact Pure Supplement by telephone and/or email, but neither a phone number nor email address is provided.[1]

---

[1] https://mypurecleansetrial.com/home/ (scroll to the bottom of the screen and click on "Terms" to see the Terms & Conditions) (last accessed May 15, 2017).

32. The "Cancellations and Refunds" section is also devoid of any contact information:



33. In addition, the "Contact" section of the Pure Cleanse Website is blank:



34. Consumers have complained that the trial offer described on the Pure Cleanse Website is a scam. Consumers report that the 14-day trial begins on the day the product is *ordered*, not the day it ships or is received, so that consumers are given only a few days with the product before their credit card is charged the full $79.61 monthly fee.

9

35. When a consumer orders a free trial of the Premium Cleanse, s/he receives an invoice that purports to be from a "Nutra Max":

```
◀ Back to Mail        8:14 AM           75% ▬
              🔒 mypurecleansetrial.com

    This charge will appear on your statement as
    Nutra Max

    Pure Cleanse                          $0.00

    Shipping & Handling                   $4.87
```

36. Because consumers receive an invoice from "Nutra Max" after they order from the Pure Cleanse Website, consumers are fraudulently led to believe that Plaintiff Nutramax is the perpetrator of the scam.

37. Due to the lack of contact information on the Pure Cleanse Website, consumers wishing to cancel their order or file a complaint research "Nutra Max" and are directed to Plaintiff Nutramax's business and contact information.

38. Consumers mistakenly believe that Plaintiff Nutramax sells the products on the Pure Cleanse Website and is the entity behind this scam.

39. Consumers have filed complaints with the Business Consumer Alliance against Plaintiff Nutramax based on Pure Supplements' fraudulent use of its name in connection with this scam.

40. Pure Supplements perpetrates substantially similar scams through all of the Pure Supplements Websites.

41. Pure Supplements is using Nutramax's registered Mark to carry out this scam and to capitalize and profit on it to the detriment of Nutramax.

10

42. Pure Supplements' use of the Mark to carry out this scam was done and continues to be done willfully and with bad faith intent to confuse the public.

43. Pure Supplements' use of the Mark to carry out this scam has significantly diluted the value and distinctive quality of Nutramax's registered Mark and has caused and continues to cause, irreparable harm to its goodwill and reputation with consumers.

## COUNT I
## Trademark Infringement - 15 U.S.C. § 1114

44. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

45. Pure Supplements' use of Nutramax's famous Mark in connection with the scams described herein is likely to cause and actually causes confusion and mistake, and/or deceives consumers as to the affiliation, connection, or association of Pure Supplements and its products and services with Plaintiff Nutramax and its products and services.

46. Pure Supplements knows that its conduct is likely to so mislead consumers.

47. Pure Supplements' trademark infringement has been and is deliberate, willful, malicious and fraudulent because Pure Supplements is intentionally capitalizing on the name, assets, and goodwill of Nutramax and its famous Mark.

48. As a direct and proximate result of Pure Supplements' conduct, Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. § 1114 and 1116. Nutramax has no adequate remedy at law for Pure Supplements' continuing violations of the Lanham Act, as set forth herein.

## COUNT II
### Trademark Dilution - 15 U.S.C. § 1125(c)

49. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

50. Nutramax's Mark is famous and distinctive and is entitled to protection against dilution by blurring or tarnishment.

51. Pure Supplements' use of Nutramax's Mark in connection with the scams described herein is causing dilution of the distinctive qualities of the Mark.

52. Pure Supplements' violations of the Lanham Act have been and are deliberate, willful, malicious and fraudulent because Pure Supplements is intentionally presenting consumers with Nutramax's name and Mark in connection with its scams, which has caused and continues to cause damage to Nutramax's reputation and dilution of its famous Mark.

53. As a direct and proximate result of Pure Supplements' conduct, Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. § 1116 and 1117. Nutramax has no adequate remedy at law for Pure Supplements' continuing violations of the Lanham Act, as set forth herein.

## COUNT III
### False Designation of Origin - 15 U.S.C. § 1125

54. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

55. Pure Supplements' improper use of Nutramax's Mark constitutes a false designation of origin, a false or misleading description of fact or a false or misleading representation of fact. The foregoing activities are likely to cause confusion as to the origin, sponsorship or approval of the various trial offers and products described above.

56. Pure Supplements' use of Nutramax's Mark in connection with the scam described above is deliberate, willful, malicious and fraudulent.

57. As a direct and proximate result of Pure Supplements' conduct, Plaintiff Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. § 1114 and 1116. Plaintiff Nutramax has no adequate remedy at law for Pure Supplements' continuing violations of the Lanham Act, as set forth herein.

### COUNT IV
### Common Law Fraud

58. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

59. Pure Supplements' use of Nutramax's name and Mark is a false representation of fact. Nutramax is not now, nor has it ever been, affiliated with Pure Supplements, the Premium Cleanse and Garcinia Cambogia products, or the trial offers and scams described above.

60. That false representation of fact is material because it has misled and continues to mislead consumers into believing that Plaintiff Nutramax is affiliated with Pure Supplements, the Premium Cleanse and Garcinia Cambogia products, and/or the trial offers and scams described above.

61. Pure Supplements has made and continues to make this sort of material misrepresentation of fact with full knowledge of its falsity.

62. Pure Supplements' use of Nutramax's name and Mark in connection with the scam described above is intentional.

63. Consumers are unaware that Plaintiff Nutramax is not affiliated with Pure Supplements, the Premium Cleanse and Garcinia Cambogia products, or the trial offers and

scams described above and rely on Pure Supplements' representation that it is. This is clear from the fact that consumers have addressed complaints about these scams to consumer protection agencies naming Plaintiff Nutramax as the offending entity.

64. Consumers' reliance on Pure Supplements' false representations is reasonable, as Plaintiff Nutramax's name shows up on consumers' credit card statements in connection with the purchase of the Premium Cleanse and/or Garcinia Cambogia products.

65. Both Plaintiff Nutramax and consumers are proximately harmed by Pure Supplements' false representations; consumers are left without any redress for the pecuniary injury suffered due to the scam trial offers, and Plaintiff Nutramax suffers extraordinary harm to its reputation and goodwill (both as a business and of its registered Mark) as previously explained.

66. As a result of Pure Supplements' fraudulent conduct, Nutramax has suffered and continues to suffer damages in an amount yet to be determined.

## COUNT V
### Violation of SCUPTA - S.C. Code § 39-5-10, *et seq*.

67. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

68. Pure Supplements' past and continued use of Nutramax's Mark with the intent to deceive and defraud the public into believing that the Premium Cleanse and Garcinia Cambogia products and the trial offer scams are affiliated with Plaintiff Nutramax, constitutes unfair and deceptive acts or practices in the conduct of trade or commerce in violation of S.C. Code Ann. § 39-5-10 *et seq*.

69. Said conduct affects the public's interest and is capable of repetition.

70. Pure Supplements' actions are a willful and knowing violation of S.C. Code Ann. § 39-5-10, with total disregard for the rights of Plaintiff Nutramax as well as the public interest.

71. As a direct result of Pure Supplements' unfair trade practices, Nutramax has been injured and damaged, and is entitled to recover treble damages, costs, and attorneys' fees.

## COUNT VI
### Preliminary and Permanent Injunction

72. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

73. Pure Supplements' actions, set forth above have caused and threaten to cause Nutramax irreparable harm for which there is no adequate remedy at law.

74. Nutramax has no adequate remedy at law because monetary damages are incapable of protecting Nutramax from Pure Supplements' continuing and future trademark infringement and other violations of law.

75. Unless enjoined by this Court, Nutramax will be irreparably harmed by Pure Supplements' actions.

76. Nutramax is likely to succeed on the merits.

77. The balance of equities favors Nutramax. The potential harm to Pure Supplements in the event this injunction is granted is nonexistent as it would only be prevented from profiting from its current and future trademark infringement and other violations of law.

78. The public interest is served in preventing and rectifying Pure Supplements' actions, and will not be disserved by entry of the requested injunctive relief.

WHEREFORE, the Plaintiff, Nutramax, requests that this Honorable Court:

A. Enter judgment in favor of the Plaintiff Nutramax and against Defendant Pure Supplements on all counts.

B. Enter a preliminary and permanent injunction restraining and enjoining Defendant Pure Supplements, its agents, divisions, subsidiaries, officers, agents, employees, attorneys, and all those persons in active concert or participation with it from making false and misleading statements of fact in connection with its Premium Cleanse and Garcinia Cambogia products and the trial offers of both, and any other products marketed, distributed, or sold by Pure Supplements, including, but not limited to the false statements identified above;

C. Enter a preliminary and permanent injunction ordering Defendant Pure Supplements to engage in corrective actions to cure the misperceptions its false statements have caused in the marketplace;

D. Award Nutramax its actual damages incurred as a result of Defendant's wrongful acts as described herein;

E. Award Plaintiff Nutramax treble damages pursuant to 15 U.S.C. § 1117 and/or S.C. Code Ann. § 39-5-140;

F. Award punitive damages to deter future similar conduct by the Defendant;

G. Award the Plaintiff Nutramax its reasonable attorneys' fees and costs;

H. Award the Plaintiff Nutramax pre-judgment and post-judgment interest in the maximum amount allowed under the law;

I. Adjudge that Defendant Pure Supplements has willfully and deliberately engaged in false advertising and unfair practices and find that this is an "exceptional case" under the Lanham Act; and

J. Award such other and further relief as it deems just and reasonable.

## **Jury Trial Claim**

Plaintiff Nutramax claims a trial by jury on all issues so triable.

| | |
|---|---|
| Charleston, South Carolina<br>Dated:  May 16, 2017 | /s/ Christopher A. Jaros<br>Christopher A. Jaros<br>Federal ID# 12094<br>E-Mail: christopher.jaros@klgates.com<br>K&L GATES LLP<br>134 Meeting Street, Suite 500<br>Charleston, SC 29401<br>Telephone: 843.579.5600<br>Facsimile: 843.579.5601<br><br>Morgan T. Nickerson<br>E-Mail:  morgan.nickerson@klgates.com<br>K&L GATES LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA 02111<br>Telephone:  617.261.3100<br>Facsimile:  617.261.3175<br><br>*To Be Admitted Pro Hac Vice*<br><br>ATTORNEYS FOR PLAINTIFF<br>NUTRAMAX LABORATORIES, INC. |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### ROCK HILL DIVISION

| | | |
|---|---|---|
| Nutramax Laboratories, Inc., | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFICATION** |
| | ) | |
| Pure Supplements Ltd., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Troy R. Henderson, D.C., being first duly sworn, deposes and says that: he is the Executive Vice President of Nutramax Laboratories, Inc.; he has read the foregoing Verified Complaint; and he believes the facts and allegations of the Verified Complaint to be accurate based on his own personal knowledge, the inquiry of other employees, or the review of documentation.

_____
Troy R. Henderson, D.C.
Nutramax Laboratories, Inc.

SWORN and subscribed to before me
this 15 day of May, 2017

_____ (L.S.)
Notary Public for South Carolina
My commission expires: 03-01-22