# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | | |
|---|---|---|
| Nutramax Laboratories, Inc., | ) | Civil Action No. 0:17-cv-01260-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **FINDINGS OF FACT, CONCLUSIONS** |
| | ) | **OF LAW, AND ORDER AND OPINION** |
| Pure Supplements Ltd., | ) | **GRANTING MOTION FOR** |
| | ) | **PRELIMINARY INJUNCTION**[1] |
| Defendant. | ) | |
| | ) | |

Plaintiff Nutramax Laboratories, Inc. ("Nutramax" or "Plaintiff") filed this action against Defendant Pure Supplements Ltd. ("PSL" or "Pure Supplements") alleging claims of infringement on its registered trademark/intellectual property. (ECF No. 1.)

This matter is before the court on Nutramax's unopposed Motion for Preliminary Injunction. (ECF No. 8.) After full consideration of Nutramax's Motion, Verified Complaint and all other matters presented, the court **GRANTS** Nutramax's Motion for Preliminary Injunction.

## I. FINDINGS OF FACT RELEVANT TO PENDING MOTION

1. Nutramax researches, markets, distributes, and sells "high quality nutritional supplement products for use by humans and animals throughout the United States and internationally, under its trademarked name, NUTRAMAX LABORATORIES®." (ECF No. 1 at 1 ¶ 1.)

---

[1] Rule 52 of the Federal Rules of Civil Procedure requires the court to "state the findings and conclusions that support" the "granting or refusing [of] an interlocutory injunction." Fed. R. Civ. P. 52(a)(2). To the extent any findings of fact constitute conclusions of law, they are adopted as such; to the extent any conclusions of law constitute findings of fact, they are so adopted.

2. "Nutramax uses, owns, and has registered on the Principal Register of the United States Patent and Trademark Office the following mark relevant to this action (the "Mark"):

| MARK | REG. NO. | REG. DATE | CLASS/GOODS |
|---|---|---|---|
| Nutramax Laboratories | 2231260 | March 16, 1999 | Dietary food supplements" |

(ECF No. 1 at 4 ¶ 15 (referencing ECF No. 24-2 at 2).)

3. PSL also "manufactures, markets, and distributes dietary supplements." (Id. at 1 ¶ 2.) Two of PSL's products are at issue in this matter: "a 'Premium Cleanse,' which purports to 'help detoxify the body and facilitate healthy and effective digestion,' and a supplement called 'Garcinia Cambogia,' an appetite suppressant that has been described as the 'newest, fastest, fat burner.'" (Id.)

4. PSL advertises, markets and sells Premium Cleanse and Garcinia Cambogia on various websites. (Id. at 5 ¶ 24.)

5. "All of the Pure Supplements Websites offer consumers the opportunity for a 'Risk-Free Trial' of one or both of these products." (Id. at 8 ¶ 30.)

6. "Consumers have complained that the trial offer described on the Pure Cleanse Website is a scam." (Id. at 9 ¶ 34.)

7. "When a consumer orders a free trial of the Premium Cleanse, s/he receives an invoice that purports to be from a 'Nutra Max.'" (Id. at 10 ¶ 35.)

8. "Because consumers receive an invoice from 'Nutra Max' after they order from the Pure Cleanse Website, consumers are fraudulently led to believe that Plaintiff Nutramax is the perpetrator of the scam." (Id. at ¶ 36.)

9. "Consumers mistakenly believe that Plaintiff Nutramax sells the products on the Pure Cleanse Website and is the entity behind this scam." (Id. at ¶ 37.)

10. "Pure Supplements is using Nutramax's registered Mark to carry out this scam and to capitalize and profit on it to the detriment of Nutramax." (Id. at ¶ 41.)

11. On May 8, 2015, Nutramax filed a Verified Complaint alleging claims against PSL for trademark infringement, trademark dilution, false designation of origin, common law fraud, violation of the South Carolina Unfair Trade Practices Act, and for preliminary and permanent injunction. (ECF No. 1 at 11 ¶ 44–15 ¶ 78.)

12. Thereafter, on May 24, 2017, Nutramax filed a Motion for Preliminary Injunction (ECF No. 8) and Motion to Expedite Hearing on the Motion for Preliminary Injunction.[2] (ECF No. 9.)

13. Nutramax served its Motion for Preliminary Injunction and a Notice of Hearing on PSL on May 26, 2017. (ECF No. 17.)

14. On June 19, 2017, the court held a hearing on Nutramax's Motion for Preliminary Injunction. (ECF No. 33.) PSL did not appear at the June 19, 2017 hearing. After hearing argument from counsel for Nutramax, the court observed that it would enter an order granting the Motion for Preliminary Injunction (id.) and allow Nutramax approximately 90 days to conduct discovery necessitated by the injunction.

## II. LEGAL STANDARD AND ANALYSIS

A. <u>Preliminary Injunctions Generally</u>

15. The court's authority to issue a preliminary injunction arises from Rule 65,[3] but "it is an extraordinary remedy never awarded as of right." <u>Winter v. Nat'l Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must establish all four of

---

[2] The court observes that Nutramax's Motion to Expedite Hearing (ECF No. 9) was granted by Text Order on May 25, 2017. (ECF No. 13.)

[3] The court observes that "rule" refers to the Federal Rules of Civil Procedure.

the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Id.; The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009).

16. The Fourth Circuit no longer recognizes a "flexible interplay among the four criteria for a preliminary injunction." Real Truth, 575 F.3d at 347. Each of these requirements "must be fulfilled as articulated." De la Fuente v. S.C. Dem. Party, CA No. 3:16-cv-00322-CMC, 2016 WL 741317, at *2 (D.S.C. Feb. 25, 2016). A plaintiff must first prove the first two elements before a court considers whether the balance of the equities tips in his favor. See Real Truth, 575 F.3d at 346–47. Additionally, the court pays particular attention to the public consequences of employing this extraordinary form of relief via injunction. Real Truth, 575 F.3d at 347 (citing Winter, 555 U.S. at 24).

17. "The traditional purpose of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of the lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." De La Fuenta, 2016 WL 741317, at *2.

B. Nutramax's Request for Relief

18. Nutramax seeks a preliminary injunction that: (a) enjoins PSL "from infringing Plaintiff's registered trademarks in connection with its Premium Cleanse and Garcinia Cambogia products and the trial offers of both, and any other products marketed, distributed, or sold by Pure Supplements . . ."; (b) enjoins PSL "from making false and misleading statements of fact in connection with its Premium Cleanse and Garcinia Cambogia products and the trial offers of both, and any other products marketed, distributed, or sold by Pure Supplements, . . ."; and (c)

4

requires PSL to "[i]mmediately take appropriate corrective actions to cure the misperceptions its false statements and trademark infringement have caused in the marketplace, by . . . [l]isting appropriate contact information on all of the Pure Supplements Websites and any other websites on which it sells Garcinia Cambogia and/or Pure Cleanse products; and . . . [c]ontacting consumers of any trial offers for Garcinia Cambogia and/or Pure Cleanse products and informing them that Pure Supplements is in no way affiliated with Plaintiff and providing them accurate contact information for Pure Supplements; . . . ." (ECF No. 8 at 1–2.)

C. The Court's Review

19. In support of its Motion for Preliminary Injunction, Nutramax relies on its Verified Complaint (ECF No. 24-1), a copy of a search document authenticating its Trademark Registration Number (ECF No. 24-2), a copy of a document demonstrating the search results for "nutramax" in the U.S.P.T.O. Trademark Electronic Search System (ECF No. 24-3) and a consumer complaint filed with the Business Consumer Alliance (ECF No. 24-4).

20. The court heard oral argument from Nutramax's counsel on June 19, 2017. (ECF No. 33.) Even though it was served with a copy of the Motion for Preliminary Injunction and was provided Notice of the Hearing (ECF No. 17), PSL did not appear at the June 19, 2017 hearing.

21. The court addresses below the vitality of Nutramax's assertions under each of the four requirements set forth in Winter and reiterated by the Fourth Circuit in Real Truth.

III. SPECIFIC FINDINGS AND CONCLUSIONS

A. Clear Showing of Likely Success on the Merits

22. "[P]laintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits." Pashby v. Delia, 709 F.3d 307, 321 (4th Cir. 2013) (citing Winter,

5

555 U.S. at 20). "Although this inquiry requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial, Real Truth, 575 F.3d at 345, plaintiffs need not show a certainty of success, see 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948.3 (2d ed. 1995). Pashby, 709 F.3d at 321.

23. Nutramax is likely to succeed on all of its claims alleging that PSL has used and continues to use its "Nutra Max" trademark without authorization in connection with its Risk Free Trial Scams.[4]

24. Specifically, Nutramax is likely to succeed on its trademark infringement[5] and false designation of origin claims because it is the exclusive owner of the Mark, which PSL used in commerce and in connection with the sale of product in a manner likely to confuse consumers.[6] (ECF No. 8-1 at 12–15.)

25. Nutramax is likely to succeed on its trademark dilution claim[7] because its Mark is famous and has been diluted by PSL's conduct. (Id. at 16–19.)

---

[4] "Risk Free Trial Scams" refers to the defined term used in Nutramax's Memorandum in Support of Its Motion for a Preliminary Injunction. (ECF No. 8-1.)

[5] Because Nutramax is likely to be successful on its trademark infringement claim, it is also likely to be successful on its unfair trade practices claim "because the elements and proof of these claims are identical." (ECF No. 8-1 at 11–12 n.2 (citing Nat'l Van Lines, Inc. v. Nat'l Van Lines Inc., C/A No. 4:12-926-TLW, 2013 WL 2180739, at *6–7 (D.S.C. May 20, 2013) ("Under South Carolina law, proof of trademark infringement is sufficient to establish a violation under SCUTPA.")).)

[6] "Both infringement and false designation of origin have five elements." Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005). "To prevail under either cause of action, the trademark holder must prove: (1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred 'in commerce'; (4) that the [opposing party] used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers." Id. (citation omitted).

[7] The Trademark Dilution Revision Act of 2006 ("TDRA"), 15 U.S.C. § 1125(c), authorizes claims for trade dilution. The TDRA provides as follows:

26. Finally, Nutramax is likely to succeed on its common law fraud[8] claim because all 9 elements are shown by PSL's continued use of the Mark and its effects on consumers. (Id. at 19–20.)

B.     Likelihood of Suffering Irreparable Harm Absent an Injunction

27. Winter also requires that the party requesting injunctive relief demonstrate that it is likely it will suffer irreparable harm absent the preliminary injunction. 555 U.S. at 22–23. The harm to be prevented must be of an immediate nature and not simply a remote possibility. Am. Whitewater v. Tidwell, No. 8:09-cv-02665-JMC, 2010 WL 5019879, at *11 (D.S.C. Dec. 2,

---

> Subject to the principles of equity, the owner of a famous mark . . . shall be entitled to an injunction against another person who . . . commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C.A. § 1125(c)(1) (emphasis added). A mark is "famous" when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." Id. § 1125(c)(2)(A). Creating causes of action for only dilution by blurring and dilution by tarnishment, the TDRA defines "dilution by blurring" as the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." Id. § 1125(c)(2)(B). It defines "dilution by tarnishment" as the "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." Id. § 1125(c)(2)(C).

Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 264 (4th Cir. 2007). "[T] to state a dilution claim under the TDRA, a plaintiff must show: (1) that the plaintiff owns a famous mark that is distinctive; (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark; (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark." Id. at 264–65.

[8] The elements of fraud under South Carolina law are: "(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." Cheney Bros., Inc. v. Batesville Casket Co., Inc., 47 F.3d 111, 114 (4th Cir. 1995).

2010) (citing In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003)).

28. "When analyzing the irreparable harm element, there are two inquiries: 1) whether the plaintiff is indeed suffering actual and imminent harm; and 2) whether that harm is truly irreparable, or whether it can be remedied at a later time with money damages." Sauer-Danfoss Co. v. Nianzhu Luo, C/A No. 8:12-3435-HMH, 2012 WL 6042831, at *1 (D.S.C. Dec. 5, 2012) (quoting First Quality Tissue SE, LLC v. Metso Paper USA, Inc., C/A No. 8:11-2457-TMC, 2011 WL 6122639, at *2 (D.S.C. Dec. 9, 2011)).

29. Upon its review, the court finds that Nutramax has clearly shown it will suffer irreparable harm in the event its Motion is denied.

30. Nutramax's irreparable harm is demonstrated by the fact that PSL's conduct has misled customers. (ECF No. 8-1 at 21.) Unless a preliminary injunction is granted that prohibits PSL from using Nutramax's registered trademarks, PSL will continue to use Nutramax's Mark to deceive customers into believing that Nutramax is the entity behind the Risk Free Trial Scams. Such conduct has caused and is likely to cause Nutramax irreparable harm.

31. "[P]roof of actual consumer deception alone is sufficient for a showing of irreparable harm." (Id. (citing PBM Prod., LLC v. Mead Johnson, Co., 639 F.3d 111, 126 (4th Cir. 2011) (holding irreparable harm element satisfied "primarily on the fact that [defendant's] advertising misled customers.")).) Moreover, irreparable harm is presumed "where a party is likely to succeed on claims of trademark infringement." (Id. (citing Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 939 (4th Cir. 1995) ("Infringement gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff.")).)

32. In consideration of the foregoing, the court is able to infer both the actuality and imminency of the irreparable harm suffered by Nutramax.

33. To demonstrate a need for injunctive relief, a plaintiff must show how the harm suffered is such that other forms of damages available in the normal course of litigation are not enough. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough," because of the "the possibility that adequate compensatory or other corrective relief will be available at a later date." Hughes Network Sys. v. Interdigital Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994). This "weighs heavily against a claim of irreparable harm." Id.

34. "A preliminary injunction is not normally available where the harm at issue can be remedied by money damages." Bethesda Softworks, LLC v. Interplay Entm't Corp., 452 F. App'x 351, 353 (4th Cir. 2011).[9]

35. In the context of this matter, the court is persuaded that the continued infringement on its Mark causing actual customer confusion cannot be remedied by money damages. In this regard, the court finds that money damages in the instant case would not be adequate based on the current evidence of record.

C. The Balance of Equities and the Public Interest Factors

36. Generally, in determining whether to grant a motion for injunctive relief, "[t]he

---

[9] The presumption against issuing preliminary injunctions where a harm suffered can be remedied by money damages at judgment stems from real concerns the issuance of a preliminary injunction remedy raises. These concerns include, for example, the fact that in issuing a preliminary injunction order, a district court is required, based on an incomplete record, to order a party to act in a certain way. Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994). Issuing an injunction further risks repetitive litigation, that which carries significant costs for both parties. Id. Thus, there are only "extraordinary circumstances" that are "quite narrow" in application, where preliminary injunction is appropriate notwithstanding monetary damages. Id. (discussing a Plaintiff's business not being able to survive as an example of such circumstances.)

court must also consider the balance of hardships between the litigants and the impact on the public at large prior to issuing an injunction." Uhlig, LLC v. Shirley, C/A No. 6:08-cv-01208-JMC, 2012 WL 2458062, at *4 (D.S.C. June 27, 2012).

37. Above, the court found that Nutramax will suffer irreparable harm without an injunction. Alternatively, there is no evidence that PSL will suffer any harm if Nutramax's Motion is granted.

38. The balance of equities tips in Nutramax's favor because on one hand it has "invested millions of dollars and significant time and effort in advertising, promoting, and developing its trademarks, and establishing substantial goodwill in its intellectual property, . . . ." (ECF No. 8-1 at 22.) "On the other hand, Pure Supplements' unauthorized use of Nutramax's registered Mark is a calculated and purposeful attempt to confuse consumers into thinking that Nutramax, rather than Pure Supplements, is the entity behind the Risk Free Trial Scams." (Id.) In this regard, PSL "has no equitable interest in perpetuating false claims regarding the origin of its products" (id.) and its alleged scam to defraud consumers is not deserving of any legal protection.

39. Finally, an injunction is in the public interest because it would "prevent customer confusion in the marketplace" and ensures that "manufacturers accurately represent their products." (ECF No. 8-1 at 23 (citing, e.g., Augusta Nat'l, Inc. v. Exec. Golf Mgmt., Inc., 996 F. Supp. 492, 499 (D.S.C. 1998) ("The right of the public to be free from the deception that results from a defendant's use of a plaintiff's trademark is transcendent.")).) Without an injunction preventing PSL from using Nutramax's registered Mark, consumers do not know the entity behind the Risk Free Trial Scams and have no ability to seek redress for the harm they have suffered.

40. Accordingly, the court finds that granting Nutramax injunctive relief is in the public's interest.

D. <u>Required Posting of Bond</u>

41. Rule 65 provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

42. After considering the circumstances alleged in instant Motion, the court will require Nutramax to post a modest bond of one thousand dollars ($1,000.00) to take advantage of the relief granted in this Order. See <u>Hoechst Diafoil Co. v. Nan Ya Plastics Corp.</u>, 174 F.3d 411, 421 (4th Cir. 1999) (acknowledging the requirement that a district court set an injunction bond and also acknowledging that the court can set the bond "in such sum as the court deems proper").

## IV. CONCLUSION

43. Having found that Nutramax has satisfied all of the requirements for preliminary injunctive relief, the court **GRANTS** Plaintiff Nutramax Laboratories, Inc.'s Motion for Preliminary Injunction (ECF No. 8). The court **ORDERS, ENJOINS AND RESTRAINS** Defendant Pure Supplements Ltd., its agents, divisions, subsidiaries, officers, agents, employees, attorneys, and all those persons in active concert or participation with it, from directly or indirectly using Nutramax Laboratories, Inc.'s registered trademarks in connection with Pure Supplements Ltd.'s Premium Cleanse and Garcinia Cambogia products and the trial offers of both, and any other products marketed, distributed, or sold by PSL, including but not limited to any form of "Nutra Max" and the Mark identified in the Verified Complaint; and further **ORDERS** Pure Supplements Ltd. to immediately take appropriate corrective actions to cure the

misperceptions its false statements and trademark infringement have caused in the marketplace, by: (1) listing appropriate contact information on all of the Pure Supplements Websites[10] and any other websites on which it sells Garcinia Cambogia and/or Pure Cleanse products; and (2) contacting consumers of any trial offers for Garcinia Cambogia and/or Pure Cleanse products and informing them that Pure Supplements Ltd. is in no way affiliated with Nutramax Laboratories, Inc. and providing them accurate contact information for Pure Supplements Ltd.

44. The preliminary injunction will become effective upon Nutramax's posting of the required one thousand dollars ($1,000.00) security/bond with the Clerk of Court. The Clerk of Court is directed to place any funds received from Nutramax in a non-interest-bearing account.

45. Having granted the aforementioned Motion for Preliminary Injunction, the court also **GRANTS** Plaintiff Nutramax Laboratories, Inc.'s request to conduct any discovery necessitated by this injunction for a period of 90 days from the entry date of this Order. (ECF No. 9.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

June 27, 2017
Columbia, South Carolina

---

[10] "Pure Supplements Websites" shall refer to the defined term used in Nutramax's Memorandum in Support of Its Motion for a Preliminary Injunction, which includes not only the specific URLs listed therein, but also includes any other website on which Defendant Pure Supplements advertises, markets, offers to sell, and/or sells Garcinia Cambogia and/or Pure Cleanse products. (See ECF No. 8-1, at 5-6 ("Pure Supplements advertises, markets, offers to sell, and sells Premium Cleanse and Garcinia Cambogia, both separately and together, through various websites, including but not limited to . . . .") (emphasis supplied).)