# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ROCK HILL DIVISION

| | | |
|---|---|---|
| Nutramax Laboratories, Inc., | ) | Civil Action No.  0:17-cv-1260-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| Pure Supplements Ltd., iPartnr, LLC, Spirit | ) | Jury Trial Requested |
| Lake Services, LLC, Elizabeth Leach, | ) | |
| Justin Christensen, Christian Barnes, and | ) | |
| Justin Barnes, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiff Nutramax Laboratories, Inc. ("Plaintiff" or "Nutramax") as and for its First Amended Complaint ("First Amended Complaint") against Defendants Pure Supplements Ltd., iPartnr, LLC, Spirit Lake Services, LLC, Elizabeth Leach, Justin Christensen, Christian Barnes, and Justin Barnes (collectively, "Defendants") alleges upon personal knowledge as to its own acts and as to events taking place in its presence, and upon information and belief as to all other facts, as follows:

## NATURE OF THIS ACTION

1.      Plaintiff Nutramax owns the trademark that forms the basis for this Civil Action. For several decades, Nutramax has researched, marketed, distributed, and sold high quality nutritional supplement products for use by humans and animals throughout the United States and internationally, under its trademarked name, NUTRAMAX LABORATORIES®.

2.      Defendants manufacture, market, and distribute dietary supplements for human use.  Among them are a supplement called "Premium Cleanse," which purports to "help detoxify the body and facilitate healthy and effective digestion."

3.      Defendants offer "free" trials of the Premium Cleanse products, the exact terms of which vary.  In all cases, however, Defendants offer the consumer a trial bottle of product if s/he pays the cost of shipping.  Defendants mail the consumer a "free" full supply of the product, and promise not to charge the consumer for that full bottle until the trial period has expired.  But consumers across the country complain that Defendants charge the approximately $80 full bottle price *before* the expiration of the trial period, and also complain that they are unable to obtain a refund or cancel the recurring monthly charges that follow.

4.       After purchasing Defendants' products, consumers see the approximately $80 per bottle charge associated with "Nutra Max" on their credit card statements.  As a result, consumers are fraudulently misled into believing that Plaintiff Nutramax is the supplier of the products and is behind this scam.

5.      As a result of Defendants' trademark infringement and fraud, Nutramax is suffering a loss to the enormous goodwill it has created in its intellectual property.  Further, Defendants' false and misleading designation of origin of its products causes ongoing customer confusion and irreparable harm in the marketplace.  This action seeks permanent injunctive relief and damages for Defendants' ongoing trademark infringement, fraud, and unfair trade practices.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this First Amended Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

7.      This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a).

8.    This Court has personal jurisdiction over Defendants in this district, as Defendants transact business in South Carolina and are otherwise subject to jurisdiction in this state.   Defendants sell products directly to persons residing in this judicial district via the Internet.

9.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c).

## PARTIES

10.    Plaintiff Nutramax Laboratories, Inc. is a corporation duly organized and existing under the laws of South Carolina, with its principal office located at 946 Quality Drive, Lancaster, South Carolina.

11.    Defendant Pure Supplements Ltd. is a corporation duly organized and existing under the laws of Delaware.   Upon information and belief, Pure Supplements has its principal office in New Castle, Delaware.

12.    Defendant iPartnr, LLC is a Utah limited liability company with its principal place of business located at 51 West Center Street, Ste. 250, Orem, UT 84057.   Upon information and belief, Defendant iPartnr, LLC also maintains a place of business located at 240 N. University Avenue, Provo, UT 84606.   Defendant iPartnr also does business as "iPartnr Cleanse" and "iPartnr Diet."

13.    Defendant Spirit Lake Services, LLC is a Delaware limited liability company with its principal place of business located at 301 McCollugh Drive, Ste. 400, Charlotte, NC 28263.

14.    Defendant Elizabeth Leach is an individual residing at 872 S. Greenridge Avenue, Payson, UT 84651.   Defendant Leach is the owner of Defendant Spirit Lake Services, LLC. Defendant Leach may also be known as or operate under the name Elizabeth Jane Wells.

15.    Defendant Justin Christensen is an individual residing at 1020 North 700 East, Mapleton, Utah 84664.  Defendant Christensen is an owner/operator of Defendant iPartnr.

16.    Defendant Christian Barnes is an individual residing at 51 West Center Street, Ste. 250, Orem, UT 84057.  Defendant Christian Barnes is an owner/operator of Defendant iPartnr and is also its registered agent.

17.    Upon information and belief, Defendant "Justin Barnes" is an individual residing 40 N. University Avenue, Provo, UT 84606.  Upon information and belief, "Justin Barnes" is a fictitious name, an amalgamation of Defendants Justin Christensen and Christian Barnes.

**FACTS GIVING RISE TO THIS ACTION**

18.    Nutramax licenses its intellectual property, including the Mark, as defined herein, to certain subsidiary companies who in turn research, market, distribute, and sell high quality nutritional supplements for humans and animals. These products are world-renowned for their high quality.

19.    These health products embodying Nutramax intellectual property are sold throughout South Carolina, the United States, and the world, through a network of authorized resellers.

### A. *Nutramax's Trademark Uses*

20.    Since at least as early as 1992, long prior to the infringing acts alleged herein, Nutramax has continuously used the NUTRAMAX mark in commerce in the State of South Carolina in this judicial district and throughout the United States and the world, in connection with the manufacture and sale of a wide variety of products that support human health.

21.    Nutramax uses, owns, and has registered on the Principal Register of the United States Patent and Trademark Office the following mark relevant to this action (the "Mark"):

| Mark | Reg. No. | Reg. Date | Class/Goods |
|------|----------|-----------|-------------|
| NUTRAMAX LABORATORIES | 2231260 | Mar. 16, 1999 | Dietary food supplements |

22.    Nutramax's federal trademark registration was duly and legally issued, is valid and subsisting, and constitutes *prima facie* evidence of Nutramax's exclusive ownership of the Mark. The Mark is famous and incontestable under federal trademark law.

23.    Nutramax has invested many millions of dollars and has expended significant time and effort in advertising, promoting, and developing its trademarks and other intellectual property, including the Mark, throughout the United States. As a result of such advertising and promotion, Nutramax has established substantial goodwill and widespread recognition in the Mark, which has become associated *exclusively* with Nutramax, by both customers and potential customers, as well as the general public at large.

24.    To create and maintain such goodwill among its customers, Nutramax has taken substantial steps to ensure that products bearing its trademarks, including the Mark, are of the highest quality. As a result, Nutramax trademarks, including the Mark, have become widely known and are recognized throughout the United States as symbols of high quality products. Customers throughout the United States recognize the Nutramax name, upon which they rely for high quality products.

25.    As a result of, *inter alia*, the care and skill exercised by Nutramax in the conduct of its business, the high quality of the goods sold under Nutramax's trademarks, including the Mark, and the extensive advertising, sale, and promotion by Nutramax of its products, the Mark has acquired secondary meaning in the United States, including in the State of South Carolina.

26.    Nutramax is not now, nor has it ever been, affiliated with Defendants and has not now, nor has it ever, given them permission to use its Mark.

### B. Defendants' Product Sales

27.    Defendants manufacture, advertise, market, offer to sell, and sell a dietary supplement called "Premium Cleanse" which purports to aid digestive health.

28.    Upon information and belief, Defendants advertise, market, offer to sell, and sell Premium Cleanse through various websites, including but not limited to: https://mypurecleansetrial.com/home/ (the "Pure Cleanse Website").

29.    Defendants Justin Christensen, Christian Barnes, and/or Justin Barnes are the registrant for the Pure Cleanse Website.  The email address associated with the registrant is "justin@ipartnr.com."

30.    The Pure Cleanse Website features a version of the Premium Cleanse product as shown below:

 

31.    The bottles of Premium Cleanse featured on the Pure Cleanse Website indicate that they are "Distributed by:  Pure Supplements, New Castle, DE 19720":



## C. *Defendants' Trademark Infringement and Fraudulent Conduct*

32.    The Pure Cleanse Website offers consumers the opportunity for a "Risk-Free Trial" of Premium Cleanse.

33.    The "Terms & Conditions" of the Pure Cleanse Website include a trial offer providing that the consumer can obtain a "free" initial bottle of Premium Cleanse by paying only the $4.87 cost of shipping.  After the expiration of the 14-day trial period, Defendants charge the consumer for his/her first $74.74 bottle plus $4.87 shipping, for a total of $79.61.  Defendants represent that consumers "are not obligated to purchase after [receipt of the] discounted membership bottle and [] can cancel anytime."  The Terms & Conditions on the Pure Cleanse

Website provide options to contact Defendant Pure Supplement by telephone and/or email, but neither a phone number nor email address is provided.[1]

34.    The "Cancellations and Refunds" section is also devoid of any contact information:



35.    In addition, the "Contact" section of the Pure Cleanse Website is blank:



---

[1] Since the filing of Nutramax's original Complaint in this matter, the domain "https://mypurecleansetrial.com/home/" has been suspended.

36.     Consumers have complained that the trial offers described on the Pure Cleanse Website is a scam. Consumers report that the trial begins on the day the product is *ordered*, not the day it ships or is received, so that consumers are given only a few days with the product before their credit card is charged the full almost $80 monthly fee.

37.     When a consumer orders a free trial of Premium Cleanse from the Pure Cleanse Website, s/he frequently receives an invoice that purports to be from a merchant called "Nutra Max":



38.     On other occasions, Defendants use other names to charge consumer credit cards, including but not limited to "Beauty Within" and "Nutra Diet."

39.     When consumers receive an invoice from "Nutra Max" after they order from the Pure Cleanse Website, consumers are fraudulently led to believe that Plaintiff Nutramax is the perpetrator of the scam.

40.     Due to the lack of contact information on the Pure Cleanse Website, consumers wishing to cancel their order or file a complaint research "Nutra Max" and are directed to Plaintiff Nutramax's business and contact information.

41.     Consumers mistakenly believe that Plaintiff Nutramax sells the products on the Pure Cleanse Website and is the entity behind this scam.

42.     Consumers have filed complaints with *Plaintiff Nutramax's* customer service department as well as with the Business Consumer Alliance against *Plaintiff Nutramax* based on Defendants' fraudulent use of its name (and registered trademark) in connection with this scam.

43.     Defendants are using Nutramax's registered Mark to carry out this scam and to capitalize and profit on it to the detriment of Nutramax.

44.     Defendants' use of the Mark to carry out this scam was done and continues to be done willfully and with bad faith intent to confuse the public.

45.     Defendants' use of the Mark to carry out this scam has significantly diluted the value and distinctive quality of Nutramax's registered Mark and has caused and continues to cause, irreparable harm to its goodwill and reputation with consumers.

## COUNT I
### Trademark Infringement - 15 U.S.C. § 1114

46.     Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this First Amended Complaint as if fully set forth herein.

47.     Defendants' use of Nutramax's famous Mark in connection with the scams described herein is likely to cause and actually causes confusion and mistake, and/or deceives consumers as to the affiliation, connection, or association of Defendants and their products and services with Plaintiff Nutramax and its products and services.

48.     Defendants know that their conduct is likely to so mislead consumers.

49.     Defendants' trademark infringement has been and is deliberate, willful, malicious and fraudulent because Defendants are intentionally capitalizing on the name, assets, and goodwill of Nutramax and its famous Mark.

50.     As a direct and proximate result of Defendants' conduct, Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as

10

provided in 15 U.S.C. § 1114 and 1116. Nutramax has no adequate remedy at law for Defendants' continuing violations of the Lanham Act, as set forth herein.

## COUNT II
### Trademark Dilution - 15 U.S.C. § 1125(c)

51.     Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this First Amended Complaint as if fully set forth herein.

52.     Nutramax's Mark is famous and distinctive and is entitled to protection against dilution by blurring or tarnishment.

53.     Defendants' use of Nutramax's Mark in connection with the scams described herein is causing dilution of the distinctive qualities of the Mark.

54.     Defendants' violations of the Lanham Act have been and are deliberate, willful, malicious and fraudulent because Defendants are intentionally presenting consumers with Nutramax's name and Mark in connection with these scams, which has caused and continues to cause damage to Nutramax's reputation and dilution of its famous Mark.

55.     As a direct and proximate result of Defendants' conduct, Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. §§ 1116 and 1117. Nutramax has no adequate remedy at law for Defendants' continuing violations of the Lanham Act, as set forth herein.

## COUNT III
### False Designation of Origin - 15 U.S.C. § 1125

56.     Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this First Amended Complaint as if fully set forth herein.

57.     Defendants' improper use of Nutramax's Mark constitutes a false designation of origin, a false or misleading description of fact or a false or misleading representation of fact.

The foregoing activities are likely to cause confusion as to the origin, sponsorship or approval of the various trial offers and products described above.

58.    Defendants' use of Nutramax's Mark in connection with the scam described above is deliberate, willful, malicious and fraudulent.

59.    As a direct and proximate result of Defendants' conduct, Plaintiff Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. §§ 1114 and 1116.  Plaintiff Nutramax has no adequate remedy at law for Defendants' continuing violations of the Lanham Act, as set forth herein.

## COUNT IV
### Common Law Fraud

60.    Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this First Amended Complaint as if fully set forth herein.

61.    Defendants' use of Nutramax's name and Mark is a false representation of fact. Nutramax is not now, nor has it ever been, affiliated with Defendants, the Premium Cleanse products, or the trial offers and scams described above.

62.    That false representation of fact is material because it has misled and continues to mislead consumers into believing that Plaintiff Nutramax is affiliated with Defendants, the Premium Cleanse products, and/or the trial offers and scams described above.

63.    Defendants have made and continue to make this sort of material misrepresentation of fact with full knowledge of its falsity.

64.    Defendants' use of Nutramax's name and Mark in connection with the scam described above is intentional.

65.    Consumers are unaware that Plaintiff Nutramax is not affiliated with Defendants, the Premium Cleanse products, or the trial offers and scams described above and rely on

Defendants' representation that it is. This is clear from the fact that consumers have addressed complaints about these scams to consumer protection agencies naming Plaintiff Nutramax as the offending entity.

66.     Consumers' reliance on Defendants' false representations is reasonable, as Plaintiff Nutramax's name shows up on consumers' credit card statements in connection with the purchase of the Premium Cleanse products.

67.     Both Plaintiff Nutramax and consumers are proximately harmed by Defendants' false representations; consumers are left without any redress for the pecuniary injury suffered due to the scam trial offers, and Plaintiff Nutramax suffers extraordinary harm to its reputation and goodwill (both as a business and of its registered Mark) as previously explained.

68.     As a result of Defendants' fraudulent conduct, Nutramax has suffered and continues to suffer damages in an amount yet to be determined.

## COUNT V
### Violation of SCUPTA - S.C. Code § 39-5-10, *et seq*.

69.     Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this First Amended Complaint as if fully set forth herein.

70.     Defendants' past and continued use of Nutramax's Mark with the intent to deceive and defraud the public into believing that the Premium Cleanse products and the trial offer scams are affiliated with Plaintiff Nutramax, constitutes unfair and deceptive acts or practices in the conduct of trade or commerce in violation of S.C. Code Ann. § 39-5-10 *et seq*.

71.     Said conduct affects the public's interest and is capable of repetition.

72.     Defendants' actions are a willful and knowing violation of S.C. Code Ann. § 39-5-10, with total disregard for the rights of Plaintiff Nutramax as well as the public interest.

13

73.    As a direct result of Defendants' unfair trade practices, Nutramax has been injured and damaged, and is entitled to recover treble damages, costs, and attorneys' fees.

## COUNT VI
### Preliminary and Permanent Injunction

74.    Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this First Amended Complaint as if fully set forth herein.

75.    Defendants' actions, set forth above have caused and threaten to cause Nutramax irreparable harm for which there is no adequate remedy at law.

76.    Nutramax has no adequate remedy at law because monetary damages are incapable of protecting Nutramax from Defendants' continuing and future trademark infringement and other violations of law.

77.    Unless enjoined by this Court, Nutramax will be irreparably harmed by Defendants' actions.

78.    Nutramax is likely to succeed on the merits.

79.    The balance of equities favors Nutramax.  The potential harm to Defendants in the event this injunction is granted is nonexistent as it would only be prevented from profiting from its current and future trademark infringement and other violations of law.

80.    The public interest is served in preventing and rectifying Defendants' actions, and will not be disserved by entry of the requested injunctive relief.

WHEREFORE, the Plaintiff, Nutramax, requests that this Honorable Court:

A.    Enter judgment in favor of the Plaintiff Nutramax and against Defendants on all counts.

B.    Enter a preliminary and permanent injunction restraining and enjoining Defendants, their agents, divisions, subsidiaries, officers, agents, employees,

attorneys, and all those persons in active concert or participation with them from making false and misleading statements of fact in connection with their Premium Cleanse products and the trial offers, and any other products marketed, distributed, or sold by Defendants, including, but not limited to the false statements identified above;

C.    Enter a preliminary and permanent injunction ordering Defendants to engage in corrective actions to cure the misperceptions its false statements have caused in the marketplace;

D.    Award Nutramax its actual damages incurred as a result of Defendants' wrongful acts as described herein;

E.    Award Plaintiff Nutramax treble damages pursuant to 15 U.S.C. § 1117 and/or S.C. Code Ann. § 39-5-140;

F.    Award punitive damages to deter future similar conduct by the Defendants;

G.    Award the Plaintiff Nutramax its reasonable attorneys' fees and costs;

H.    Award the Plaintiff Nutramax pre-judgment and post-judgment interest in the maximum amount allowed under the law;

I.    Adjudge that Defendants have willfully and deliberately engaged in false advertising and unfair practices and find that this is an "exceptional case" under the Lanham Act; and

J.    Award such other and further relief as it deems just and reasonable.


## Jury Trial Claim

Plaintiff Nutramax claims a trial by jury on all issues so triable.


15

Charleston, South Carolina          */s/ Christopher Jaros*
Dated:  August 30, 2017              Christopher A. Jaros
                                     Federal ID# 12094
                                     E-Mail: christopher.jaros@klgates.com
                                     K&L GATES LLP
                                     134 Meeting Street, Suite 200
                                     Charleston, SC 29401
                                     Telephone: 843.579.5600
                                     Facsimile: 843.579.5601

                                     Morgan T. Nickerson
                                     E-Mail:  morgan.nickerson@klgates.com
                                     K&L GATES LLP
                                     State Street Financial Center
                                     One Lincoln Street
                                     Boston, MA 02111
                                     Telephone:  617.261.3100
                                     Facsimile:  617.261.3175

                                     *To Be Admitted Pro Hac Vice*

                                     ATTORNEYS FOR PLAINTIFF
                                     NUTRAMAX LABORATORIES, INC.